Prepared by: Cody Donovan
174 Lenox Ave
New Milford, New Jersey, 07646
201-981-1499
CJDonovan01@gmail.com

UNITED STATES DISTRICT COURT,

WESTERN DISTRICT OF VIRGINIA,

ABDINGTON DIVISION

| | |
|---|---|
| CODY J. DONOVAN, | Case No.: 1:21CV5 |
| Plaintiff, | |
| vs. | COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS |
| BUCHANAN COUNTY SHERIFFS OFFICE, GRUNDY POLICE DEPARTMENT, SOUTHWEST VIRGINIA REGIONAL JAIL AUTHORITY, CHIEF AARON FLETCHER (GRUNDY PD), FORMER DEPUTY SHANNON MCCOY (BCSO), DEPUTY SGT BRANDON HALL (BCSO) | |
| Defendant | |

### Introduction

1. This action arises from a January 21, 2019 incident in which the officers of the Buchanan County Sheriff's Department and the Grundy Police Department, acting under the color of state law, conspired to intentionally and willfully subject plaintiff to, inter alia, unlawful use of force, while failing to provide Plaintiff with adequate medical care, as well as false arrest and false imprisonment in violation of his constitutional rights.

### Jurisdiction and Venue

1. Plaintiff sues for violation of civil rights pursuant to 42 U.S.C. Section 1983. This court has jurisdiction over such claims pursuant to 28 U.S.C. Sections 1331 and 1343.3.
2. The acts and omissions giving rise to Plaintiffs claims occurred in Buchanan County and therefore the appropriate venue for this action is the United States District Court for the Western District of Virginia located in Abington, Virginia.

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

## Identification of Parties

1. Plaintiff Cody James Donovan is a 29-year-old resident of the Town of New Milford, New Jersey. At the time of the incident, he was a student at the Appalachian School of Law and was a resident of Virginia. He was physically harmed while under an Emergency Custody Order signed by a magistrate, then was maliciously prosecuted by the Defendants.

2. Plaintiff was a 27-year-old law student with no criminal record. Since that time, he has been forced to put his life on hold to recover from the damage caused by the Defendants.

3. Defendant Buchanan County Sheriff's Department is a county entity which employs or employed the Defendant Officers.

4. Defendant Grundy Police Department is a town entity located in Buchanan County and was jointly responsible for the Plaintiff's care while under an Emergency Custody Order.

5. Defendant Southwest Virginia Regional Jail Authority operates the Haysi Jail facility located in Dickenson County and serves the County of Buchanan for the housing of inmates.

6. At all times relevant hereto, Chief Aaron Fletcher was the Police Chief assigned to the Grundy Police Department.

7. At all times relevant hereto, Brandon Hall was a Deputy Sheriff assigned to the Buchanan County Sheriff's Office.

8. At all times relevant hereto, Shannon McCoy was a Deputy Sheriff assigned to the Buchanan County Sheriff's Office.

9. All defendants acted under color of law in committing the acts complained of herein.

10. Plaintiff demands a jury trial.

## Statement of Facts

1. The incident occurred within the Western District of Virginia in Buchanan County, Virginia, specifically, 1037 Gene St., in the Township of Grundy, and at the Buchanan County Sheriff's Office, located at 1327 Lovers Gap Rd, Vansant.

2. The incident began around 10:00 am on January 21st, 2019.

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

3. Plaintiff incorporates all of the preceding paragraphs, including the allegations in the Introduction, as if they were fully set forth again at this point.

4. Plaintiff's girlfriend called 911 for medical assistance for the Plaintiff, who was suffering from a PTSD episode, due to having a lack of his prescribed medications issued from the Veterans Administration.

5. The above Defendants were dispatched to the Plaintiff's residence, a 2-story home, located on 1037 Gene St., Grundy, Virginia.

6. When the Defendant Aaron Fletcher arrived at the Plaintiff's home, he took off his issued radio and proceeded to enter the Plaintiff's house with permission of the Plaintiff's girlfriend, Laura Martin.

7. Chief Fletcher sent Laura Martin to the upstairs of the 2-story home to tell the Plaintiff to come downstairs.

8. When Laura Martin entered the room in a quick manner, this scared the Plaintiff, who had just performed maintenance on his firearm, and accidently shot a pistol round into the ceiling of the residence, and Chief Fletcher sent Laura Martin to go outside and call 911 for backup because he did not have his radio.

9. At this point, the Plaintiff was in fear for his life because Chief Fletcher was not following standard law enforcement procedures.

10. Chief Fletcher, yelling from downstairs, then instructed the Plaintiff to leave the room, but the Plaintiff refused, and wanted to wait for another officer to arrive on scene.

### First Cause of Action

### Violation of Civil Rights – 42 U.S.C. section 1983

### Excessive use of Force, False Arrest, False imprisonment Second Cause of Action, Deliberate Indifference to Serious Medical Needs

**BUCHANAN COUNTY SHERIFF'S OFFICE, GRUNDY POLICE DEPARTMENT, CHIEF AARON FLETCHER (GRUNDY PD), FORMER DEPUTY SHANNON MCCOY (BCSO), DEPUTY SGT. BRANDON HALL (BCSO)**

1. Plaintiff incorporates all of the preceding paragraphs, including the allegations in the Introduction, as if they were fully set forth again at this point.

2. During this time, several Buchanan County Sheriffs arrived on scene, and Deputy Shannon McCoy attempted to gather the several Buchanan Sheriffs and stated "What are you all waiting for? Just go up there and blow his fucking head off!"

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

3. Around 1:10 pm, Sheriff Ray Foster arrived and instructed the officers on the scene to holster their firearms, and proceeded to speak with the Plaintiff, who came out of the room without incident.

4. At this point, the Plaintiff expressed his love for Law Enforcement and began to apologize to the officers on the scene, and was given a mini–Buchanan County Sheriff's Badge from Sheriff Ray Foster, along with a pack of "Cheyenne" cigarettes, while sharing a cigarette with the Plaintiff at his dining room table.

5. Aaron Fletcher, Chief of Grundy PD, filed for an Emergency Custody Order, which was signed and approved by a Magistrate at 1:35 pm, in which the Plaintiff was ordered to be transported immediately to Buchanan General Hospital.

6. Plaintiff was instead transported to the Buchanan County Sheriff's Office by Ray Foster, in his pickup truck, where Sheriff Ray Foster stopped at McDonalds located in Vansant, Virginia on the way to the Sheriff's Office.

7. Once the Plaintiff arrived at the Sheriff's Office, Plaintiff was told by Ray Foster that he was not under arrest, and that he will get the medical care that he needs.

8. Sheriff Ray Foster left the location and placed the Plaintiff in the care of Deputy Shannon McCoy and Deputy Brandon Hall.

9. Approximately 10 minutes after the Sheriff left, the Plaintiff walked toward the front door of the police station to go outside to have a cigarette, as he had already done several times previously while there.

10. Deputy Shannon McCoy then pushed the Plaintiff on the center of his chest and began to reach for his firearm.

11. The Plaintiff, in fear for his life, and realizing that McCoy considered him a real threat, attempted to apologize again, and attempted to remove the hand which McCoy had placed on his chest.

12. Defendant McCoy subsequently punched the Plaintiff in the face. As the Plaintiff reacted to the blow and moved towards the door to get away from McCoy, McCoy continued to punch the Plaintiff with a closed fist in the face until the Plaintiff fell to the ground.

13. Deputy Hall then jumped on top of the Plaintiff and attempted to choke him. The Plaintiff, still fearing for his life, immediately cried out, "please don't kill me, just put me in handcuffs!" He kept repeating this over and over as the officers held him down and continued to strike him, while using extremely painful joint manipulation techniques.

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

14. Once the Plaintiff was fully detained, McCoy got up and said, "You son-of-a-bitch, you think you're something special? I was waiting all day for this!"

### Second Cause of Action

### Violation of Civil Rights -- 42 U.S.C. section 1983

### Excessive use of Force, Deliberate Indifference to Serious Medical Needs

### BUCHANAN COUNTY SHERIFF'S OFFICE, FORMER DEPUTY SHANNON MCCOY (BCSO), DEPUTYSGT BRANDON HALL (BCSO)

15. Plaintiff incorporates all of the preceding paragraphs, including the allegations in the Introduction, as if they were fully set forth again at this point.

16. The Plaintiff was then taken into a side room in the police station and was placed on a metal bench, bleeding from the mouth and from a cut on his hand.

17. McCoy came back to speak with the Plaintiff and told him "You are fucking done!"

18. Due to the Plaintiff's injuries, the Plaintiff asked Defendant McCoy if he could call him an ambulance. McCoy refused. Note that at this time, the Plaintiff still had not received the medical attention that Sheriff Ray Foster had promised he would receive.

19. A dispatcher then walked past the Plaintiff, and the Plaintiff asked her if she could call an ambulance for him. The dispatcher agreed.

20. Shortly after the ambulance arrived, the EMTs took the Plaintiff's blood pressure and blood sugar and cleaned up his wounds. He stated to them "I don't feel well, I am in dire need of my PTSD medications, and I am in need of emergency medical attention."

21. The EMTs left the Plaintiff and spoke with deputies McCoy and Hall.

22. The EMTs came back and told the Plaintiff that the Deputies said they could not transport him and promptly left without further explanation.

### Third Cause of Action

### Violation of Civil Rights – 42 U.S.C. section 1983

### Excessive use of Force, Deliberate Indifference to Serious Medical Needs, Intentional Infliction of Emotional Distress

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

### BUCHANAN COUNTY SHERIFF'S OFFICE, FORMER DEPUTY SHANNON MCCOY (BCSO), DEPUTY SGT. BRANDON HALL (BCSO)

23. Plaintiff incorporates all of the preceding paragraphs, including the allegations in the Introduction, as if they were fully set forth again at this point.

24. The Plaintiff soon succumbed to a panic attack. The Plaintiff has a medical history of asthma and panic attacks, at the same time he was suffering from a head injury caused by Deputy McCoy.

25. At some point, he fell off the bench to the ground and began to have a seizure.

26. Deputies McCoy and Hall jumped on top of the Plaintiff and started to aggressively strike him, causing him further injuries, and all the while screaming and cursing at him.

27. The seizure eventually subsided with time, and another ambulance was called back to evaluate the Plaintiff.

28. The EMTs came back into the building and took his blood pressure again. The Plaintiff begged them to take him to the hospital. The EMTs again told the Plaintiff that they were told by the Sheriff's Deputies not to transport him to the hospital.

29. The Plaintiff was then charged in the Buchanan County General District Court for Assault and Battery on a Law Enforcement Officer, in violation of Code § 18.2-57, Attempt to Disarm a Law-Enforcement Officer, in violation of Code § 18.2-57.02, and Obstructing Justice, in violation of Code § 18.2-460.

30. The Plaintiff was placed in a van to be transported to the Haysi Regional Jail Facility with two unknown Buchanan County Sheriff's Deputies who blasted music and static at full volume for the duration of the ride, causing him further mental distress to his already debilitated mental/physical condition.

31. Plaintiff was scheduled to have a bond hearing the following morning at 9:00 a.m. This bond hearing never took place.

### Fourth Cause of Action

### Violation of Civil Rights – 42 U.S.C. section 1983

### Excessive use of Force, Deliberate Indifference to Serious Medical Needs, Intentional Infliction of Emotional Distress

### BUCHANAN COUNTY SHERIFF'S OFFICE, SOUTHWEST VIRGINIA REGIONAL JAIL AUTHORITY

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

32. Plaintiff incorporates all of the preceding paragraphs, including the allegations in the Introduction, as if they were fully set forth again at this point.

33. When the Plaintiff arrived at the jail at approximately 5:30 p.m., he was awoken by an officer doing a sternum rub on his chest- a very painful technique used to check the responsiveness of an otherwise unresponsive patient.

34. An officer attempted to pull him out of the van by his foot, but the Plaintiff was still secured by his seatbelt. The officer finally took the seatbelt off, and obviously frustrated, hauled the Plaintiff out of the van, slamming him to the pavement. The Plaintiff continued to lay there motionless, in pain, and was dragged into the jail by several officers.

35. Once inside the jail, the officers carrying him threw him onto the floor and proceeded to grab, hold, and strike the Plaintiff, all the while expressing their frustrations and dislike for him.

36. At no point did the Plaintiff resist or attempt to fight in any way. Instead, he continued to do absolutely nothing so as to ensure that the police would not mistake his movements for resisting or attempting to cause them harm.

37. While this was taking place, an officer approached the Plaintiff and placed a hood over his head and stated "This is what happens when you hit a cop." Another officer from the jail placed some type of unknown device up the Plaintiff's nose, and the Plaintiff felt some sort of spray expel from the device into his nasal cavity. The Plaintiff describes the device as some sort of inhaler or aerosol device, but he says that it felt like acid was put up his nose, because it burned so much and made him feel extremely disoriented.

38. The Plaintiff, suffering from severe asthma all his life, suffered what he described as an asthma attack at first, but this quickly evolved into another seizure. The Plaintiff began convulsing and the officers aggressively dragged the Plaintiff to a restraint chair and strapped him in.

39. The Plaintiff remembers little else of the incident other than a distinct feeling of being "extremely drunk", and the Plaintiff believes he passed out shortly after, while still strapped into the chair with a hood over his head. The Plaintiff does not remember anything until waking up an indeterminate amount of time later.

40. After another unknown amount of time, an officer took off the hood and he was taken out of the chair and placed into an empty cell. He asked for a blanket, but his request was ignored. An officer came with a tray of food and gave it to the Plaintiff.

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

41. The Plaintiff started to eat the food in the tray, but shortly after eating he became extremely ill and began to vomit uncontrollably. The Plaintiff continued vomiting all over himself and his cell.

42. He felt like he was going to pass out and was begging for help from the staff but was completely ignored.

43. The Plaintiff ended up passing out next to the toilet, on the floor, for an undetermined amount of time. He was later awoken by several officers. The Plaintiff regained his senses only to discover that his head was lying in a pile of vomit and he had urinated himself. He pleaded with the officer for help and stated that he needed to go to the hospital.

44. The Plaintiff was denied this request and the officers left his cell without offering any assistance or additional information. After another indeterminate amount of time, an officer looked into the Plaintiff's cell and observed that the Plaintiff was obviously uncomfortable in his vomit and urine covered clothing.

45. The officer told the Plaintiff that if he gave him his clothes, he would get him a blanket and something else to wear. The Plaintiff gratefully complied and gave them his clothes. The officer took his clothes though the door slot, laughed, and shut the panel on the window that allowed the Plaintiff to see out of his cell.

46. The unknown Corrections Officer never returned with any clothes or a blanket, and the Plaintiff was left in his underwear and shivering. The actions of these officers caused the Plaintiff's mental state to further erode to the point where he became convinced that there was some kind of explosive device in his cell's sink, and he began to beg for help. He was completely ignored.

47. After an estimated 16 hours in the cell with no help, a nurse finally spoke to the Plaintiff through the door. He was relieved to finally see a nurse and begged her for help and to get him to a hospital. In return, the nurse yelled at the Plaintiff and stated, "I am not helping some woman-hater like you." The nurse then slammed the viewing port closed and never returned.

48. No other medical personnel returned, nor did anyone else check on the Plaintiff's well-being. The Plaintiff was extremely distraught by this interaction with the nurse. He had no idea what she was talking about, and it only confused him more and made his PTSD symptoms worsen.

49. By this time, the Plaintiff's parents, Robert and Deidre Donovan, had arrived from an 11-hour trip from New Jersey. They stopped first at the Buchanan County Sheriff's Office and asked to speak with Sheriff Foster. Foster agreed to meet with them and told them that "the Plaintiff never threatened to harm anyone at

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

any time . . . this incident should never have happened . . . if [I] hadn't left, this would not have happened." Foster agreed that the Plaintiff needed medical attention.

50. Foster also told Mr. and Mrs. Donovan that he was speaking with his good friend, who oversaw Haysi Jail, about the incident, and in the future he "would not be against all the charges being dropped." Foster concluded in saying "what a nice young man the Plaintiff is."

51. Mr. and Mrs. Donovan then retained an attorney named Jason Gallagher (Gallagher) on behalf of the Plaintiff. Gallagher did not reach out to the Plaintiff, but he began to contact the jail to find out the Plaintiff's current status, and he was put in contact with Brian O'Quinn (O'Quinn), a Mental Health Evaluator for the Dickenson Community Service Board.

52. O'Quinn and Gallagher were eventually able to get the Plaintiff a medical evaluation and the medical attention he so desperately needed.

53. At approximately 1:00 p.m. on January 22nd, 2019, twenty-one hours after the Plaintiff was first brought to the jail, an officer passed him a jail uniform through the door and told him to get dressed. The officers then placed the Plaintiff in a restraint chair again, wheeled him over to the processing area, and formally checked the Plaintiff into the jail.

54. After the Plaintiff was checked in, an officer placed the Plaintiff in an electric stun belt, and the Plaintiff was transported to the Emergency Department at Dickenson Community Hospital. The Plaintiff was diagnosed with hypokalemia. Hypokalemia means a low potassium level in the blood. Symptoms may include muscle weakness and cramping, fatigue, abdominal pain, vomiting, constipation, or irregularities of the heartbeat.

55. Additionally, the Plaintiff had a psychiatric evaluation conducted by Brian O'Quinn, and it was determined that he needed physiological treatment for his PTSD. He was given medication for hypokalemia and was then transported back to the jail and placed in a cell.

56. Mr. O'Quinn petitioned for a Temporary Detention Order, and it was signed by a magistrate at approximately 8:00pm. During this time, a nurse employed at Haysi, named Loretta Burkett, who had never met nor even seen the Plaintiff, filed a petition for Involuntary Admission for Treatment.

57. Mr. O'Quinn arrived at the jail around 9:00 p.m., and the TDO was executed by the Buchanan County Sheriff's Office at approximately 9:30 p.m.

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

58. The Plaintiff was transported to the Southwestern Virginia Mental Health Institute, located in Marion, Virginia. It was there that the Plaintiff was finally able to get all the medications that he needed, including: Risperidone, Divalproex, and Seroquel.

59. After about three days, the Plaintiff had a commitment hearing at the Hospital, and it was continued until the following week.

60. The following week, on Friday, February 01, 2019, the Plaintiff had another commitment hearing and it was deemed that the Plaintiff responded well after receiving his PTSD medications and there was no need for the Plaintiff to be committed to the hospital.

61. On February 04, 2019, the plaintiff was released on a $5,000 unsecured bond and the criminal case is still ongoing.

### Prayer for Relief

1. Wherefore, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against the Defendants, and grant the following:
2. For general damages in the amount of $10,000,000.00;
3. For special damages in amount to be determined at trial;
4. For punitive damages against each defendant officer/sheriff in the amount of $500,000.00;
5. For costs of suit and reasonable attorneys' fees pursuant to statute;
6. Permanently enjoin and prohibit Defendants from interfering with Plaintiff's constitutional rights. Specifically, to enjoin Defendants from:
   a. Retaliating against Plaintiff or his family for bringing this lawsuit; and
   b. Subjecting Plaintiff or any other citizen to excessive force in the future.
7. For all other relief to which they may be legally entitled

Dated this 16th day of January, 2021.

Cody J. Donovan

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS