IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

CODY J. DONOVAN,             )
                           )
          Plaintiff,     )   Case No. 1:21CV00005
                           )
v.                      )   **OPINION AND ORDER**
                           )
BUCHANAN COUNTY SHERIFF'S   )   JUDGE JAMES P. JONES
OFFICE, ET AL.,             )
                           )
          Defendants.   )

*Cody J. Donovan, Pro Se Plaintiff; Joseph A. Piasta, JOHNSON, AYERS & MATTHEWS, P.L.C., Roanoke, Virginia, for Defendants Buchanan County Sheriff's Department, Shannon McCoy and Brandon Hall; Christopher S. Dadak, GUYNN, WADDELL, CARROLL & LOCKABY, P.C., Roanoke, Virginia, for Defendant Southwest Virginia Regional Jail Authority; and W. Bradford Stallard, PENNSTUART, Abingdon, Virginia, for Defendants Grundy Police Department and Aaron Fletcher.*

The plaintiff, proceeding pro se, asserts various claims under 42 U.S.C. § 1983 and state law, arising out of interactions with local law enforcement officers and a regional jail authority. The defendants have filed motions to dismiss. For the reasons that follow, the case will be permitted to proceed only as to an excessive force claim against defendants Shannon McCoy and Brandon Hall.

I.

At the motion to dismiss stage, the court must accept all well-pled facts as true, viewed in the light most favorable to the plaintiff. The facts, taken from the

plaintiff's Amended Complaint (hereafter referred to as the Complaint), are as follows.[1]

The plaintiff, Cody J. Donovan, says that he is veteran who was diagnosed with post-traumatic stress disorder in 2015.  On January 21, 2019, Donovan, who was then a first-year law student, called 911 to request assistance after he had experienced mental health issues.  Officers from both the Town of Grundy Police Department and the Buchanan County Sheriff's Department were dispatched to his home.  Donovan told the officers that he feared that "there may be an incoming terrorist attack at his law school," and that "he had been awake and not slept for the past few days and didn't have the energy to watch the school anymore."  Amend. Compl. ¶ 5–6, ECF No. 21.[2]  The officers assured Donovan that they would watch the school and left a few minutes later.

The next officer to arrive on scene was Grundy Police Chief Aaron Fletcher. Donovan was in a different room and had a pistol which he thought was unloaded, but which he accidentally discharged into the ceiling.  Fletcher directed Donovan's

---

[1]  Defendants request that the court consider a video recording of the altercation between the plaintiff and two of the law enforcement officers who are defendants. However, at the motion to dismiss stage, "courts are limited to considering the sufficiency of allegations set forth in the complaint." *Zak v. Chelsea Therapeutics Int'l., Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015).  Accordingly, I will consider only the facts alleged in the Complaint.

[2]  Donovan arranged his Complaint numerically but re-started the numbering after each section.  I have used the corresponding numbers that begin with the Statement of Facts section on page 3 of the Complaint.

girl friend to call 911 to request backup, and to tell 911 that shots had been fired. He then attempted to negotiate with Donovan to exit the room. Donovan claims that he thought it strange that a law enforcement officer would not have a radio, so he refused to exit. He attests that he was fearful he would be shot and he was doubtful Fletcher was even a law enforcement officer because of the radio issue. Shortly thereafter, additional officers from the Buchanan County Sheriff's Department arrived, including Deputy Shannon McCoy. Donovan claims that he heard McCoy shouting to other officers, "What are you all waiting for? Just go up there and blow his fucking head off!" *Id.* ¶ 28. Donovan eventually exited the room without incident after Buchanan County Sheriff Ray Foster arrived on the scene and convinced him that it was safe.

During this time, Fletcher obtained an Emergency Custody Order (ECO) from a local magistrate judge to seize Donovan and transport him to Buchanan General Hospital for a mental health evaluation. Foster transported Donovan instead to the Buchanan County Sheriff's Office. Once there, Donovan was able to wander around the office and the adjacent parking lot, and the officers ordered him a pizza after he complained that he had not eaten anything in days.

Donovan says that he became nervous that the officers wanted to hurt him, and in his anxious state, attempted to light up a cigar in front of them. After quickly realizing that he could not smoke indoors, he apologized for his mistake and

attempted again to exit through the lobby doors.  He claims that McCoy and Deputy Sheriff Brandon Hall exchanged a head nod, which he believed indicated an agreement between the two men to attack him.  He handed the box of cigars to McCoy as he tried once more to continue towards the doors, but McCoy placed his hand on Donovan's chest, preventing him from moving.  When Donovan attempted to remove McCoy's hand from his chest, fearing that McCoy was going to strike him with his other hand, McCoy "[w]ithout any hesitation . . . immediately punched [him] in the face."  *Id.* ¶ 53.

As Donovan "reacted to the blow[,] he began to fall" while "McCoy continued to punch [him], with a closed fist, in the face."  *Id.*  McCoy and Hall pushed Donovan back towards the door and in the struggle to pin him down, his head was "smashed into the metal frame of the front door rendering him temporarily stunned."  *Id.*  Hall moved on top of Donovan, while McCoy continued to punch him in the back of the head.  Hall then "attempted to choke him by placing his hands around the front of [his] neck."  *Id.* ¶ 54.  Donovan begged the officers to "tell [him] what [they] want[ed] [him] to do" and to "just put [him] in handcuffs," but they kept striking him without giving verbal commands and using "extremely painful joint manipulation techniques."  *Id.*  The officers finally placed a subdued Donovan in leg irons, and as McCoy stood up, he called Donovan a "son-of-a-bitch" and said that he had been "waiting all day for this."  *Id.* ¶ 55.  Fletcher escorted him back inside,

positioning him on a metal bench.  McCoy later approached Donovan again while he was sitting on the bench and told him, "You are fucking done."  *Id.* ¶ 57.

McCoy informed Donovan that he was being charged with attempt to disarm a law enforcement officer and assault and battery on a law enforcement officer.  Thereafter, EMTs arrived to treat Donovan, who had been demanding medical treatment and for the officers take him to the hospital.  They took his vitals and cleaned up his bleeding mouth and hands.  After he was told that the EMTs would not be transporting him to a hospital, Donovan "succumbed to a panic attack," and "[a]t some point, he lost consciousness, and fell off the bench to the ground and began to have a seizure."  *Id.* ¶¶ 64–65.  He awoke to McCoy and Hall on top of him, "striking him with their forearms" and "cursing and yelling at him."  *Id.* ¶ 66.

Once his seizures subsided, Donovan was transported to Haysi Regional Jail Facility by two unknown Buchanan County Sheriff's deputies.  During the drive, the officers blasted music and static noise, causing Donovan further mental distress.  Upon his arrival at the jail, Donovan was "hauled" out of the transport van and "slam[ed] . . . to the pavement" by an officer.  *Id.* ¶ 71.  He was then "dragged into the jail" and "dropped [] onto the floor," while the deputies again struck him.  Donovan did not resist or fight back.  *Id.* at ¶¶ 71–72.  At the same time, "an officer placed a hood over [his] head" and said, "this is what happens when you hit a cop!"

*Id.* ¶ 74.  He then felt someone shove an inhalant or aerosol device up his nose and spray some type of fluid into his nasal cavity.

Donovan further alleges that an "unknown amount of time" later, he was placed in an empty cell and served food that caused him to become extremely nauseous and vomit uncontrollably.  *Id.* ¶ 78.  He "ended up passing out next to the toilet, on the floor, for another indeterminate amount of time," and when he woke up, he realized that he had vomited and urinated on himself.  *Id.* ¶ 81.  An officer promised to provide clean clothes and a blanket, but the officer laughed as he took the soiled clothes from Donovan and no one ever returned afterwards.  He was "left in his underwear and shivering."  *Id.* ¶ 84.  After sixteen hours in the cell without receiving help, he claims that a nurse came by but she only yelled at Donovan that she would not help "[s]ome woman-hater like [him]."  *Id.* ¶ 85.

The following afternoon, Donovan was transported to the emergency room at Dickenson Community Hospital, where he was diagnosed with hypokalemia, or low potassium levels.  He also received a psychological evaluation and it was determined that he needed treatment.  The physician petitioned the court for a Temporary Detention Order, and later that evening, Donovan was transported to the Southwestern Virginia Mental Health Institute in Marion, Virginia, where he was committed for psychiatric treatment for over a week.  Afterwards, he was transported back to Haysi jail, where he was held on criminal charges related to the incident with

McCoy and Hall.  On February 4, 2019, Donovan was released on bond.  His criminal case remains unresolved and is currently scheduled for trial.

On January 19, 2021, Donovan, proceeding pro se, filed this lawsuit, alleging claims pursuant to 42 U.S.C. § 1983, for violations of his constitutional rights, and state law tort claims.  Specifically, he contends that defendants Buchanan County Sheriff's Office, former Deputy Shannon McCoy, and Deputy Brandon Hall (Buchanan County Defendants) violated his Fourth and Fourteenth Amendment rights by using excessive force and denying medical treatment.  He also alleges state-law claims for false imprisonment, malicious prosecution, and intentional infliction of emotional distress.  As to defendants Grundy Police Department and Chief Aaron Fletcher (Grundy Defendants), he claims only the denial of medical treatment.  Finally, as to defendant Southwest Virginia Regional Jail Authority (Jail Authority), he claims the denial of medical treatment, as well as state-law claims for false imprisonment and intentional infliction of emotional distress.  He seeks monetary damages and injunctive relief.

The defendants moved to dismiss the Complaint for failure to state a claim and lack of subject matter jurisdiction.  The court then granted the plaintiff's request for leave to file an amended complaint and denied defendants' motions as moot.  On January 11, 2022, the plaintiff filed an Amended Complaint without any significant changes.  The defendants again moved to dismiss the Amended Complaint as

frivolous, for failing to state a claim, and for lack of subject-matter jurisdiction.  The

motions to dismiss have been briefed and are ripe for decision.

## II.

A pro se complaint "must be liberally construed[,] however inartfully

pleaded."  *Bazemore v. Best Buy*, 957 F.3d 195, 200 (4th Cir. 2020).[3]  A Rule

12(b)(6) motion to dismiss tests the legal sufficiency of a complaint.  *Edwards v.

City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  To survive a motion to

dismiss, a plaintiff must "state[] a plausible claim for relief" that "permit[s] the court

to infer more than the mere possibility of misconduct" based upon its "judicial

experience and common sense."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

To state a § 1983 claim, a plaintiff must prove: "(1) the deprivation of a right

secured by the Constitution or a federal statute; (2) by a person; (3) acting under

color of state law."  *Jenkins v. Medford*, 119 F.3d 1156, 1159–60 (4th Cir. 1997).

States and government officials sued in their official capacities for monetary

damages, however, are not "persons" for purposes of § 1983.  *Hafer v. Melo*, 502

U.S. 21, 26–27 (1991).  Conversely, government officials sued in their individual

capacities are "persons" within the meaning of the statute, although they may be

entitled to qualified immunity.  *Id.* at 26.  Local governments, on the other hand,

---

[3]  I have omitted citations, internal alterations, and quotation marks throughout
unless otherwise noted.

may be sued directly under § 1983, but only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). The policy promulgated by the local government must be a "moving force" behind the constitutional deprivation — that is, the entity's official policy or custom must have played a part in the alleged violation of federal law. *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981).

Donovan alleges several numbered and unnumbered claims. I will re-order and clarify the basis for the claims as it appears they were intended by the plaintiff. Count 1 alleges excessive use of force, in violation of the Fourth Amendment, against the Buchanan County Defendants and the Jail Authority. Count 2 alleges deliberate indifference to serious medical needs, in violation of the Fourteenth Amendment, against the Buchanan County Defendants, the Grundy Defendants, and the Jail Authority. Count 3 alleges false imprisonment, in violation of Virginia law, against the Buchanan County Defendants and the Jail Authority.[4] Count 4 alleges malicious prosecution, in violation of Virginia law, against the Buchanan County

---

[4] The plaintiff alleges claims for "false imprisonment" and "false arrest." However, Virginia does not recognize a separate cause of action for false arrest. Rather, the common law tort of false imprisonment is used interchangeably with false arrest. *Cole v. Eckerd Corp.*, 54 Va. Cir. 269, 271 (Va. Cir. Ct. 2000).

Defendants.  Count 5 alleges intentional infliction of emotional distress, in violation of Virginia law, against the Buchanan County Defendants and the Jail Authority.

A. BUCHANAN COUNTY SHERIFF'S OFFICE DEFENDANTS.

As an initial matter, I find that the Buchanan County Sheriff's Office is not a proper defendant in this case.  "In Virginia, federal district courts have consistently held that . . . a sheriff's department" is an "arm[] of the Commonwealth of Virginia and that [it], therefore, [is] entitled to invoke the defense of immunity from suit pursuant to the Eleventh Amendment."  *Snead v. Alleghany Sheriff Dep't,* No. 7:09CV00198, 2009 WL 2003399, at *1 (W.D. Va. July 7, 2009).  Accordingly, the Buchanan County Sheriff's Department is immune from suit, and I will dismiss this defendant.

As to defendants McCoy and Hall, they are being sued in their individual capacities, which is permitted under § 1983 and is not barred by the Eleventh Amendment.  *Beardsley v. Webb,* 30 F.3d 524, 531–32 (4th Cir.1994).  The defendants argue, however, that they are entitled to qualified immunity on the excessive force and deliberate indifference claims. Qualified immunity "shields government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person."  *Meyers v. Balt. Cnty.,* 713 F.3d 723, 731 (4th Cir. 2013).  A court deciding the applicability of qualified immunity must determine

"whether a constitutional violation occurred" and "whether the right violated was clearly established." *Tobey v. Jones*, 706 F.3d 379, 385 (4th Cir. 2013).

(i)    EXCESSIVE FORCE (COUNT 1).

Under the two-prong qualified immunity analysis, I first consider whether the facts plausibly allege that a constitutional violation occurred. The Fourth Amendment's prohibition on unreasonable seizures bars police officers from "using excessive force to seize a free citizen." *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003). Whether an officer used excessive force is based on an "objective reasonableness" standard. *Id.* The court's focus is "on the moment that force was employed," *Thomas v. Holly*, 533 F. App'x 208, 219 (4th Cir. 2013) (unpublished). Disregarding an officer's intent or motive, the court "ask[s] whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Hupp v. Cook*, 931 F.3d 307, 321–22 (4th Cir. 2019). Factors to be considered include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Here, Donovan alleges that as he attempted to walk outside to the parking lot, as he has previously done earlier that day, McCoy stopped him in the entrance lobby and placed his hand on the plaintiff's chest. Donovan attempted to remove his hand.

McCoy then repeatedly punched him in the face with a closed fist. Hall and McCoy pushed him backwards and his head was "smashed into the metal frame" of a door. Amend. Compl. ¶ 53. As he fell to the ground, Hall jumped on Donovan's back, before flipping him over and attempting to choke him by placing his hands around his neck. McCoy continued to punch him in the back of the head.

Under the *Graham* factors, Donovan had not committed a serious crime at the time force was used. At worst, he was guilty of attempting to light a cigar inside of a building. He claims that he had been permitted to walk around the parking lot, so leaving the building does not appear to be an attempt to flee or resist. Donovan seems to claim that McCoy and Hall assaulted him without provocation, although it is unclear whether his attempt to remove McCoy's hand from his chest was forceful. The officers also knew that Donovan was unarmed and while he had been experiencing mental health issues, it does not appear that he was particularly unstable at that time. Thus, under these circumstances, I find that the plaintiff has plausibly alleged that the particular force used — punching him with a closed fist in the face and back of the head, slamming his head into a metal door frame, and attempting to choke him — was excessive and a violation of the Fourth Amendment.

Second, even if a constitutional violation occurred, the defendants are entitled to qualified immunity unless the right violated was clearly established at the time of the violation. "[T]he proper focus [of this inquiry] is not upon the right at its most

general or abstract level, but at the level of its application to the specific conduct being challenged." *Wiley v. Doory*, 14 F.3d 993, 995 (4th Cir. 1994).  The Fourth Circuit has repeatedly recognized that it is a violation of clearly established law in this circuit to employ excessive force "in the course of making an arrest or otherwise seizing a person." *Betton v. Belue*, 942 F.3d 184, 191 (4th Cir. 2019).   The Fourth Circuit has also held that punching a detainee four or five times "in the back of the head with a closed fist and with great force in an effort to arrest him," where it is apparent that the detainee posed no immediate threat to the officers' safety, was "objectively unreasonable." *Thomas v. Holly*, 533 F. App'x 208, 219 (4th Cir. 2013) (unpublished).  The defendants dispute whether that the plaintiff posed an immediate threat to the officers' safety, pointing to his erratic behavior throughout the day, including firing a weapon and calling 911 because he was experiencing a mental health crisis — all of which is undisputed.  At the time the force was deployed, however, it is not established, based solely on the factual allegations contained in the Complaint, that Donovan's actions posed a threat.  I therefore find determining if the right allegedly violated was clearly established is premature at this stage of the litigation.

(ii)   DELIBERATE INDIFFERENCE (COUNT 2).

Donovan alleges that the defendants Hall and McCoy were deliberately indifferent to a serious medical need, which I understand to be a claim that they did

not take him to a hospital for mental health treatment or treat his injuries after the physical altercation as soon as he requested.  For pretrial detainees, deliberate indifference claims arise under the Fourteenth Amendment rather than the Eight Amendment's prohibition against cruel and unusual punishment. *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988).  The same standard applies in either case, as the "due process rights of a pretrial detainee are at least as great as" the Eighth Amendment protections. *Id.; Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001). A pretrial detainee "may not be subjected to *any* form of 'punishment,'" but "not every inconvenience encountered during pretrial detention amounts to 'punishment' in the constitutional sense." *Martin*, 849 F.2d at 870.  "To establish that a particular condition or restriction of his confinement is constitutionally impermissible 'punishment,' the pretrial detainee must show either that it was (1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred." *Id.*

Due process may also require officials to provide medical care to detainees injured during the course of an arrest. *Id.*  The plaintiff must show first, a sufficiently serious medical need, and second, deliberate indifference to that need, either by actual intent or reckless disregard. *Cannon v. Armor Corr. Health Servs.*, No. 1:18cv202 (LO/IDD), 2019 WL 1646391, at *7 (E.D. Va. Apr. 15, 2019).  A delay may constitute deliberate indifference if it results in "substantial harm," such as

permanent loss or considerable pain. *Id.* A plaintiff cannot bring a claim for deliberate indifference against a non-medical defendant, however, "unless they were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct." *Id.*.

Here, Donovan has not alleged any facts that show that McCoy or Hall knew of and disregarded any particular serious medical need, or that they intended to punish the plaintiff in any way. To the contrary, Donovan stated that he was provided medical treatment, as EMTs arrived to tend to the bleeding cuts on his face and hands, and there is nothing to suggest that he suffered "substantial harm" because of any delay. In any event, minor abrasions to the face and extremities would not appear to constitute a serious medical need. To the extent that the plaintiff bases his deliberate indifference claim on delayed transport to a medical facility, it has not been alleged that McCoy or Hall had anything to do with the decision of whether and when to him transport to the hospital. Regardless, he was eventually taken for a psychiatric evaluation, and he has not alleged that he suffered substantial harm because of the delay. His claims therefore amount to nothing more than a disagreement with unknown officers about the timing of his medical treatment that is insufficient to support a deliberate indifference claim.

(iii)   STATE LAW TORT CLAIMS (COUNTS 3, 4, 5).

As to the remaining state-law claims, the defendants claim that the plaintiff has not alleged facts to state a plausible claim for false imprisonment and intentional infliction of emotional distress, and in any event, the court should decline to exercise supplemental jurisdiction.[5]

To prevail on a false imprisonment claim, "a plaintiff must prove that her liberty was restrained, either by words or acts that she would fear to disregard, and that there was no sufficient legal excuse to justify the restraint." *Dill v. Kroger Ltd. P'ship I*, 860 S.E.2d 372, 380 (Va. 2021). "The gist of [false imprisonment] is the illegal detention of the person, without lawful process, or the unlawful execution of lawful process." *Id.* at 381. "Accordingly, a plaintiff cannot maintain an action for false imprisonment because of an arrest pursuant to a regular and valid warrant; that is, if the imprisonment results from her being taken in due course to the magistrate and there admitted to bail or imprisoned regularly upon due order of commitment from him." *Id.*

Here, the defendants contend they had a lawful basis to detain the plaintiff, as a magistrate judge had approved an emergency custody order. Donovan has also

---

[5] Although in the Complaint, the plaintiff alleged jurisdiction pursuant to 28 U.S.C. § 1331, the court has jurisdiction over his state law claims as well because they are "so related to [his § 1983] claims . . . that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

alleged facts that demonstrate there was probable cause to detain him.  Specifically, he and his girlfriend called 911 twice because he was experiencing a mental health crisis and had disturbing thoughts about violence.  To the extent that the plaintiff bases his false imprisonment claim on his subsequent detainment following the altercation with McCoy and Hall, he admits that he had been charged with assault and battery on a law enforcement officer and attempt to disarm a law enforcement officer.  He even claims that he was scheduled for a bond hearing the next day.  In sum, nothing suggests that the officers did not have a lawful basis for holding him.

To recover on an intentional infliction of emotional distress claim, a plaintiff must prove that "(1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable; (3) there was a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress was severe." *Harris v. Kreutzer*, 624 S.E.2d 24, 33 (Va. 2006).  "Liability is present only when the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Doe ex rel. Doe v. Baker*, 857 S.E.2d 573, 589 (Va. 2021).  Here, Donovan appears to base his claim on defendants' failure to immediately take him to the hospital, which caused him to experience a panic attack, as well as on statements made by McCoy before the plaintiff was taken into custody and immediately following the altercation.  Even if

true, such allegations do not clear the high bar necessary to sustain a claim for intentional infliction of emotional distress.

Finally, the defendants contend that the claim for malicious prosecution is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  To prevail on a malicious prosecution claim, a plaintiff must prove that the prosecution was "(1) malicious; (2) instituted by or with the cooperation of the defendant; (3) without probable cause; and (4) terminated in a manner not unfavorable to the plaintiff." *Lewis v. Kei,* 708 S.E.2d 884, 889 (Va. 2011).  *Heck* requires that prior to bringing a § 1983 claim for monetary damages that necessarily implies the invalidity of a prior conviction, such as malicious prosecution claim, a plaintiff must demonstrate that he obtained a favorable termination of the underlying criminal prosecution.[6]  *Wilson v. Johnson*, 535 F.3d 262, 265 (4th Cir. 2008).  Here, the plaintiff's criminal prosecution has yet to be resolved — favorably or otherwise.  Accordingly, the claim is not ripe for adjudication.

## B.  GRUNDY DEFENDANTS.

The defendants contend that the plaintiff cannot bring suit against the Grundy Police Department because it is not a separate legal entity from the Town of Grundy.

---

[6]  The defendants argued that there is no claim for malicious prosecution under the Fourth Amendment.  The Supreme Court has recently recognized that such a claim does exist. *Thompson v. Clark*, 142 S. Ct. 1332, 1335 (2022).  Regardless, the claim is barred by *Heck* whether brought under § 1983 or state law.

They further assert that Donovan should also not be granted leave to amend to name the Town of Grundy as a proper defendant, as the amendment would be futile.  While a town may be sued directly under § 1983, municipal liability may only be established where the alleged constitutional deprivation was motivated by an official custom or policy.  *Monell*, 436 U.S. at 690.  In the present case Donovan has not alleged any facts related to an official custom or policy, let alone one that motivated the purported constitutional violations.  Accordingly, I will dismiss all claims against the Grundy Police Department.

In any event, the plaintiff appears to concede in his reply that he does not have any federal or state-law claim against the Grundy Police Department or the Town of Grundy.  He clarified that his only claim is against defendant Aaron Fletcher in his individual capacity.  He appears to allege Fletcher was deliberately indifferent to his medical needs under a theory of failure to intervene.  Specifically, he focuses on Fletcher's failure to carry a radio, his failure to follow the procedures for obtaining an emergency custody order, and his failure to intervene to prevent sheriff's deputies from violating his constitutional rights.

As to the first two allegations, Donovan has not alleged any facts that give rise to a constitutional violation.  There is no constitutional requirement that a law enforcement officer carry a radio, and Donovan has not set forth any facts to support his claim that Fletcher improperly obtained the ECO.  If anything, the facts

established that there was probable cause to support an ECO.  As to the third claim,
"[t]he Fourth Circuit addresses a failure to intervene claim as a theory of 'bystander
liability' wherein there is 'an omission to act . . . coupled with a duty to act.'"  *Jarvis
v. Securitas Sec. Servs. USA, Inc.*, No. 11-CV-00654-AW, 2012 WL 527597, at *6
(D. Md. Feb. 16, 2012) (quoting *Randall v. Prince George's Cnty.*, 302 F.3d 188,
203 (4th Cir. 2002)), *aff'd*, 474 F. App'x 271 (4th Cir. 2012) (unpublished).  To
succeed on a bystander liability claim, a plaintiff must show that the officer "(1)
knows that a fellow officer is violating an individual's constitutional rights; (2) has
a reasonable opportunity to prevent the harm; and (3) chooses not to act."  *Randall*,
302 F.3d at 204.  "The concept of bystander liability is premised on a law officer's
duty to uphold the law and protect the public from illegal acts, regardless of who
commits them."  *Id.* at 203.  Alternatively, a theory of supervisory liability "arises
from the obligation of a supervisory law officer to insure that his subordinates act
within the law."  *Id.*

Fletcher was not a supervisor of the deputy sheriffs who took the plaintiff into
custody or who allegedly violated his constitutional rights.  Moreover, Donovan
does not set forth any facts that show Fletcher was present when the alleged
violations occurred or he had an opportunity to intervene.  At most, he claims that
Fletcher escorted him back into the office following the interaction with McCoy and
Hall; however, he does not say whether Fletcher was present during or leading up to

the altercation.  Fletcher also does not appear to have been present at any point afterwards.

## C.  SOUTHWEST VIRGINIA REGIONAL JAIL AUTHORITY.

Finally, as to the Jail Authority, Donovan alleges that when he arrived at Haysi Regional Jail, operated by the Jail Authority, he was denied medical treatment and punished by unknown officers.  Specifically, he claims to have become violently ill after eating food provided to him by the facility, waking up covered in his own vomit and urine, and that that he was not provided clean clothes.  He was left shaking in his cell, wearing only his underwear, for an unknown period of time. He further alleges that a nurse came to see him, but instead of providing any treatment, she called him a woman hater, slammed the viewing port in his cell door closed, and never returned.  He was not taken to the hospital for treatment until twenty-one hours later.

Even assuming these facts are true, Donovan has failed to state a claim for relief.  Regional jail authorities are local governing bodies that may be sued directly under § 1983.  *Mears v. SWVRJA Haysi Jail Haysi Va.*, No. 7:21CV00553, 2021 WL 6133793, at *1 (W.D. Va. Dec. 29, 2021).  However, as explained above, municipal liability may be established only if the alleged constitutional deprivation was motivated by an official custom or policy.  *Monell*, 436 U.S. at 690; *Polk Cnty.*,

454 U.S. at 326.  Donovan has not alleged any facts that relate to a custom or policy,

certainly not ones that motivated the purported constitutional violations.

Donovan has also asserted state-law claims, but they too must fail.  The issue

is whether a regional jail authority operates like a municipal corporation and is

therefore entitled to sovereign immunity for the exercise of governmental functions.

I find persuasive two opinions from this district holding that jail authorities are

entitled to sovereign immunity.  *Tilson v. Humphrey*, No. 5:19-CV-033, 2019 WL

6902677, at *5–7 (W.D. Va. Dec. 18, 2019); *Haleem v. Quinones*, No. 5:17-cv-

00003, 2017 WL 4400767, at *2–7 (W.D. Va. Sept. 30, 2017).  In those cases, it was

concluded that jail authorities in Virginia possess many (or all) of the characteristics

typical of municipal corporations.  *Tilson*, 2019 WL 6902677, at *6–7.  Specifically,

they have a "quintessentially public purpose, a governing body, the ability to acquire

property, appoint officers and employees, make contracts, undertake various

projects, accept governmental grants and loans, and sue and be sued, an immunity

from taxation, and state reimbursement for construction and operational costs."  *Id.*

at *7.

## III.

In addition to monetary damages, Donovan seeks to enjoin the use of

excessive force by defendants against the plaintiff and any person in the future.  I

find that because the plaintiff is no longer detained or incarcerated by any of the

defendants, his request for injunctive relief is moot. *Inmates v. Ownes*, 561 F.2d 560, 562 (4th Cir. 1997) (holding inmates' claims for injunctive relief moot because they were "no longer subjected to the alleged treatment once they were released."). Injunctive relief as to other unknown persons or circumstances is not appropriate under the circumstances of this case. The plaintiff also appears to seek to enjoin the defendants from retaliating against him for bringing this lawsuit. Such a claim for relief is unsupported by any allegations of fact. Any claim for injunctive relief will be dismissed.

IV.

For the reasons stated, it is **ORDERED** as follows:

1. The Buchanan County Defendants' Motion to Dismiss, ECF No. 22, is GRANTED IN PART AND DENIED IN PART;

2. The Grundy Defendants' Motion to Dismiss, ECF No. 24, is GRANTED;

3. The Jail Authority's Motion to Dismiss, ECF No. 26, is GRANTED; and

4. The Clerk shall terminate Buchanan County Sheriff's Department, Southwest Virginia Regional Jail Authority, Grundy Police Department, and Chief Aaron Fletcher as parties to this case, with the only remaining defendants to be former Deputy Sheriff Shannon

McCoy and Deputy Sgt. Brandon Hall as to the sole remaining claim

of the use of excessive force pursuant to 42 U.S.C. § 1983.

ENTER:  May 19, 2022

/s/  JAMES P. JONES
Senior United States District Judge